13391

YOUNG v. ATLANTIC COAST LINE R. CO.

(163 S. E., 834)

*Messrs. J. T. Gettys, W. B. Norton* and *W. E. Snipes,* for appellant-respondent,

*Mr. M. C. Woods,* for respondent-appellant,

April 25, 1932.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This action, one for damages for personal injuries, is based upon the following alleged negligence and willful acts of the defendant: In coupling a locomotive to a box car in which plaintiff was at work, and carrying it away without notice to him, at a dangerous rate of speed, and stopping it in such manner as to precipitate him violently therefrom. The defenses were a general denial and contributory negligence.

On trial the defendant's motion for a directed verdict was refused as to actual damages, and the jury found for the plaintiff $1,500.00. The trial Judge then granted defendant's motion for a new trial, made upon the same grounds as those of the motion for a directed verdict, stating as his reasons that no negligence on the part of the defendant was proved, and that it appeared that plaintiff's own negligence was the proximate cause of his injury. Both parties appeal, the plaintiff from the order granting a new trial and the defendant from the Court's refusal to direct a verdict.

The exceptions in both appeals raise the same questions and will be disposed of together: (1) Was there any evidence of actionable negligence on the part of the defendant? (2) Were plaintiff's injuries due, as a matter of law, either

to his own sole negligence, or to his contributory negligence, as a proximate cause thereof?

As to the first question: The testimony shows that the plaintiff was an employee of a construction company engaged in paving a highway in Marion County, and that this company, for the purposes of its work, shipped materials, consisting of rock and sand, over the defendant's line of road and unloaded them at Mullins, S. C. The plaintiff testified that on May 22, 1928, he was engaged in unloading a car of rock, which the defendant had placed upon its side track for that purpose, at a point where an unloading machine was located; that a Mr. Bradford, an employee of the construction company, was operating the unloading machine, the duties of plaintiff being to shovel the rock into a pile so that it could be more easily taken up; that, on the date mentioned, while he was thus engaged, an engine of the defendant, which was being used on the yard for shifting purposes and to which were attached several box cars, came upon the side track, and suddenly, without warning or notice to him, coupled to the gondola car upon which he was working and carried it up the track out to the main line at a high rate of speed; that there it was suddenly stopped, and plaintiff was precipitated to the track in the path of the cars, which were pushed backward upon him, and he was seriously and permanently injured. As told by him in his own language: "The machine (unloading) was running, and we was working, and we didn't know they was in there fixing to strike our car. * * * They had coupled to the car and was carrying it out—they struck it in a hurry and went out in a hurry with it. They didn't notify us or anything at all. When I got throwed out of the car they had done stopped and was fixing to run back. They snatched to get a start to run backwards and they pitched me over the back and dragged me and I grabbed the axle and slid on back until it got stopped."

The conductor in charge of the train which injured the plaintiff testified that he saw the men at work unloading the

rock and went back and warned them to get out, as the "cars were going to be handled and moved." When asked the question whether it was unusual for people to ride up and down on cars being shifted, he replied, "When I see them it is. I get them out." The defendant also introduced in evidence a statement of A. P. Meadows, a foreman of the construction company, of what he would have testified if he had been present, which was to the effect that he had repeatedly explained to his men, including the plaintiff, that it was dangerous to remain on the cars they were unloading when such cars were being shifted. While this evidence was in conflict with the testimony of the plaintiff as to notice from the conductor and warning by the foreman, it tended to establish the fact that defendant regarded it dangerous to ride upon these cars when they were being shifted as in the present case.

We think that the testimony clearly made a question of fact for the jury as to whether, in the circumstances, the defendant negligently failed to notify the plaintiff that it was about to move the car on which he was working, and, if so, whether such negligent act was the proximate cause of his injuries.

As to the second question: The defendant alleged that the plaintiff was guilty of contributory negligence in the following particulars: (1) In remaining in the car which he knew was about to be moved, and. (2) in so conducting himself while the car was being shifted as to cause his fall therefrom.

The first specification is not seriously argued by the defendant, and properly so for the reason that the plaintiff testified positively that no notice was given him that the car was about to be moved, and that he was carried away on it without being given a chance to get off. With respect to the second specification, the defendant makes the following contentions: That the plaintiff, being a man of experience, knew that cars in shifting will bump and jerk, and that this was liable to occur at any moment; that, even though he was

taken out without notice, he was in a place of safety in the box car and would have suffered no harm if he had remained there until the car was returned to its place on the side track; that he placed himself in a position of danger by getting upon the pile of rock and reaching for his shovel, a danger which did not exist prior to this act and which was created by the plaintiff himself, and that in so doing he did not exercise the care required of a man of reasonable prudence in the circumstances, but was guilty of negligence which contributed, as a matter of law, proximately to his injury.

The plaintiff, as we have stated, testified strongly to the effect that a sudden jerk of the train threw him off, but, on cross-examination, he testified also as follows:

"Q. Was there a shovel in that car? A. Yes, sir; my shovel was in there.

"Q. Did you not, immediately after the accident, state to numerous people that you were sitting down on that rock, or words to this effect, and that you went to get your shovel and when you reached for it, the train gave a jerk and you fell? Did you make that statement immediately after the accident and since the accident? A. Yes, sir; I was getting my shovel. * * *

"Q. Did you not state in the presence of everybody that went around by there, railroad men and citizens of Mullins that the reason you fell was that you went to reach for your shovel and the train gave a jerk and it unbalanced you and fell? A. Yes, sir; I was going to get my shovel. I was not sitting down—when I was going after the shovel I was already standing up.

"Q. Didn't you state the cause of your falling was your reaching for the shovel? A. No, sir.

"Q. You signed a statement about it? A. No, sir; I haven't signed no statements. * * *

"Q. Did you or not make the statement I read to you? A. Part of it I made and part I didn't.

"Q. What part did you make? A. That is what I want to tell you. My statements was that I made was that I was standing in the car and was reaching at my shovel to throw it out on the ground so if they had stopped I was going to get off. When they carried it up the line and they stopped and when I goes up to get my shovel that's when they made the snatch.

"Q. Did you say when you were getting up? A. When I got up to get my shovel I was down in the car. Here's my getting up point.

"Q. What did you get up from? You told me you didn't sit down? A. My getting up proposition is this—I didn't mean I was sitting down. I was down in the car and I was getting up on the rock pile.

"Q. The train was being shifted while you were getting up on the rock pile? A. It had stopped and when I was getting up on the rock pile to get my shovel it struck again.

"Q. If you had stayed where you were you wouldn't have been hurt? A. I don't know about that.

"Q. Didn't you say right after the accident you were sorry you didn't let the shovel alone—if you hadn't reached for the shovel you wouldn't have fallen. A. Yes, sir; I said that."

And again:

"Q. You told Mr. Norton that after the train coupled up and went out it didn't stop until you were hurt? That's what you told Mr. Norton? A. He asked me did it stop up on the switch line, and I told him it didn't stop between places until it gets up on the switch line. When it gets up on the switch line it stops. That's when I was going to get my shovel and the car struck again to get a start to come back— that's when it snatched me over, and when they struck— coupled up—that's when I fell backwards from the car, and then they was coming back.

"Q. You reached for the shovel? A. Yes, sir.

"Q. That's what caused you to go overboard? A. Yes, sir; I went overboard right then.

"Q. Because you were reaching for the shovel? A. Yes, sir; I was getting my shovel right then."

From this testimony, it is clear that, about the time the train momentarily stopped, the plaintiff reached for his shovel as preparatory to getting off; and that almost at the same instant the train started forward with a jerk and he was precipitated therefrom. While he stated immediately after the accident that, if he had not reached for the shovel, he would not have fallen, at the trial he declined to admit unqualifiedly that reaching for the shovel was the cause of his fall, and testified that it was the sudden start or jerk of the train that threw him off. Under all the testimony, the Court could not say, as a matter of law, that the plaintiff's reaching for his shovel was negligence *per se,* or that a person of ordinary prudence and care would not have so acted in the circumstances. Nor was plaintiff's statement that he was sorry he had reached for the shovel necessarily an admission that such act was negligent; it might be regarded as merely an expression of regret, in the light of after events, such as one often hears in the everyday affairs of life involving no question of negligence on the part of the speaker. Viewing the evidence in the light most favorable to the plaintiff, as we must in considering the defendant's motion, we think it required the submission to the jury of the question of plaintiff's contributory negligence. The exceptions, therefore, of the plaintiff must be sustained and those of the defendant overruled.

The judgment of the lower Court, granting a new trial, is reversed, and the case remanded to that Court, with directions for entry of judgment in favor of the plaintiff on the verdict of the jury.

Mr. Chief Justice Blease and Messrs. Justices Carter and Bonham concur.